UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ETCHIE,

    Petitioner,                                Civil No. 2:13-CV-14113
                                                HONORABLE VICTORIA A. ROBERTS
v.                                          UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Carol Etchie, ("Petitioner"), confined at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges her conviction for assault with intent to murder, M.C.L.A. § 750.83, and felony firearm, M.C.L.A. § 750.227b.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

A jury convicted Petitioner in Wayne County Circuit Court. The evidence produced at trial reflects that Lino Jimenez, and his girlfriend, Amy Aguilar, were en route to look at a possible used car for Ms. Aguilar located on Lawndale Street. (Tr. 9/21/10, pp. 97-98). Because there were no available parking spots on the road, Mr. Jimenez parked in an empty lot that was between an empty business and Petitioner's house. (*Id.* at 99-100, 119). There were no signs, so Mr. Jimenez thought he was parking

in a vacant lot and parked close to the empty business. (*Id*. at 101, 107, 115-16, 166, 187, 206). One of their daughters who remained in the car began yelling, prompting Ms. Aguilar to leave the car seller's house. Ms. Aguilar saw Petitioner yelling at her daughter, attempted to move the car, but hit a pole. Mr. Jimenez heard the commotion, looked out of the house window, saw Ms. Aguilar attempting to move the car, left the house and moved the car back to its original spot. As Ms. Aguilar explained to Mr. Jimenez that a "lady" was yelling at their daughter, Petitioner approached the car. (*Id*. at 102-109, 124-125, 166-168).

She attempted to take a picture. When Mr. Jimenez tried to speak to Petitioner, she told him to "get away." Less then a minute later, Petitioner pulled a gun out of a pouch she carried around her neck. Mr. Jimenez asked if she was going to shoot him; he then heard four shots. He was hit in his hand, back of the arm, back, and the back of the head. (*Id.* at 106-110).

Ms. Alissa Johnson Shahan was walking with her next door neighbor at approximately 7:00 p.m. in the evening. Ms. Shahan observed the confrontation between Petitioner and Mr. Jimenez. Petitioner pulled out a gun and Mr. Jimenez put his hands in the air. Mr. Jimenez said "shoot me shoot me I'm not afraid of no gun." Petitioner shot Mr. Jimenez 3 times and he fell to the ground. Petitioner stood over Mr. Jimenez and shot at him 2 more times. (*Id.,* p. 207).

Petitioner testified that she was 65 years of age at the time of the incident. Petitioner went to the front door of her house after hearing a commotion outside.

Petitioner testified that when she goes to the front door she brings a fanny pack which holds her gun for protection. Petitioner testified that she has been the victim of crimes in the past. (Tr. 9/22/10, pp. 8-10). Much of Petitioner's testimony concerning the events mirrored the testimony of the victim and the other witnesses. (*Id.,* pp. 14-20). Petitioner, however, testified that she shot Mr. Jimenez in self-defense. Petitioner testified that Mr. Jimenez walked toward her vehicle parked in her driveway and tried to open the rear door, but the car was locked. Mr. Jimenez began walking away before turning around and charging at her. Petitioner claimed that Mr. Jimenez came within 18 inches to 24 inches from her before raising his hand to try and back hand her. Petitioner unzipped her fanny pack, pulled the gun out and shot Mr. Jimenez. Petitioner testified that she shot Mr. Jimenez because she was afraid he was going to hurt her. Petitioner testified that when she fired the first shot, Mr. Jimenez was trying to punch her. Mr. Jimenez fell after being shot. Mr. Jimenez began to rise from the ground. Petitioner was surprised that Mr. Jimenez was able to get back up and she shot him two more times. Petitioner testified that she was afraid of Mr. Jimenez getting to her before she could enter her home. (*Id.,* pp. 20-28).

Petitioner's conviction was affirmed. *People v. Etchie*, No. 301497, 2012 WL 556194, (Mich. Ct. App. Feb 21, 2012)*, lv. den.* 493 Mich. 865, 820 NW 2d 918 (2012).

Petitioner seeks a writ of habeas corpus on the following ground: Ms. Etchie was denied her constitutional right to the effective assistance of counsel due to counsel's failure to introduce evidence of Ms. Etchie's post-traumatic stress disorder which

developed following a brutal attack in her younger years.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination

4

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.  Discussion

Petitioner alleges that trial counsel was ineffective when counsel failed to introduce evidence of Petitioner's post-traumatic stress disorder which resulted from a past assault from 1966, in order to support her claim of self-defense.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his or her defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just

5

conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.

Petitioner claims that trial counsel was ineffective for failing to introduce evidence of Petitioner's post-traumatic stress disorder which developed following a brutal attack in her younger years.

The Michigan Court of Appeals rejected Petitioner's claim finding:

[D]iminished capacity less than legal insanity is not a defense, *People v. Carpenter*, 464 Mich. 223, 237, 239; 627 NW2d 276 (2001), and "special traits of the individual defendant" such as "mental disturbance[s]" are not relevant in determining whether there was sufficient provocation to reduce murder to voluntary manslaughter, *People v. Sullivan*, 231 Mich.App. 510,

6

519–520; 586 NW2d 578 (1998).

> [I]t is unlikely that the court or jury would have found the evidence of defendant's posttraumatic stress disorder relevant to her self-defense claim. Further, such evidence was more likely to hurt defendant's credibility if admitted because it would have tended to explain why defendant might have perceived danger where there was none. Indeed, if evidence of defendant's posttraumatic stress disorder had been admitted, the jury may have been less likely to believe defendant's testimony that the victim charged at her, attempted to punch her, and would have hurt her had she not shot first.

*People v. Etchie*, No. 301497, 2012 WL 556194, at *1-2.

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999)(citing to *People v. Heflin*, 434 Mich. 482; 456 N. W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan*, 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of

self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan*, 207 F. Supp. 2d at 609 (internal citation omitted).

The Michigan Court of Appeals articulated the standard used in determining whether petitioner acted in self-defense:

> Self-defense, as a legal defense to a charge of murder or assault with intent to murder, requires evidence that the defendant honestly and reasonably believed that her life was in imminent danger or that there was a threat of great bodily harm. This belief must be based on the circumstances as they appeared to the defendant at the time.
> ************************************************************
> [D]iminished capacity less than legal insanity is not a defense, and "special traits of the individual defendant" such as "mental disturbance[s]" are not relevant in determining whether there was sufficient provocation to reduce murder to voluntary manslaughter[.]

*Etchie, Supra.* at *1. (internal citations omitted).

The Michigan Court of Appeals noted that the evidence that Petitioner contends should have been admitted pertaining to her post-traumatic stress disorder would be considered "special traits of the individual defendant" such as "mental disturbance[s]," would not be relevant under M.R.E. 404(b), and likely would be inadmissible. *Id.* at 1.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals seemed to suggest that evidence of post-

traumatic stress disorder was probably not admissible in support of Petitioner's self-defense claim. This Court must defer to that determination in resolving Petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).

Further, there was no evidence that the victim was armed at the time of the shooting. (Tr. 9/21/10, pp. 109-110). Although Ms. Aguilar had a conversation with Petitioner prior to the shooting, the conversation ended before Petitioner returned to the victim's car and pulled a gun on the victim. Trial counsel's decision to not present evidence of Petitioner's post-traumatic stress disorder constituted sound trial strategy, since presenting such a defense could support a finding by the jury that Petitioner "might have perceived danger where there was none." *Etchie, Supra.* at 2. Defense counsel already presented evidence Petitioner was in fear for her life and adding a post-traumatic stress disorder defense may have also confused issues. *See Plemons v. Fortner*, 511 F. App'x. 492, 498-99 (6th Cir. 2013)(state postconviction court's determination that state prisoner's trial counsel did not perform deficiently, in prosecution for second-degree murder, in failing to present evidence of prisoner's mental conditions in combination with the self-defense theory presented by counsel, was not contrary to or an unreasonable application of Supreme Court's *Strickland* standard for ineffective assistance of counsel, as would provide basis for federal habeas relief; counsel testified that counsel had been fully aware of prisoner's mental conditions, and counsel explained why counsel and prisoner decided to pursue a theory of self-defense without suggesting

9

to jury that such action was result of mental illness, i.e., to avoid "cloud[ing] up" the self-defense theory by "trying to say I did this in self defense but I am also crazy.")

Furthermore, self-defense was probably not viable because Petitioner used excessive force by shooting the victim while the victim was on the ground. *See e.g. Ivory v. Jackson*, 509 F.3d 284, 296 (6th Cir. 2007)(counsel not ineffective in failing to present self-defense claim that was not viable). Trial counsel was not ineffective for failing to present petitioner's post-traumatic stress disorder. The claim is without merit.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that

jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; she failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. ORDER


**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

<div style="text-align:right">
S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge
</div>

Dated:  March 31, 2015

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Carol Etchie by electronic means or U.S. Mail on March 31, 2015.

S/Carol A. Pinegar
Deputy Clerk

---